STATE OF IOWA v. EDWIN CLARK, *et al.*, Appellants.

**Election Judges:** REFUSING VOTE. The court charged that, in order to convict of refusing a vote it must be shown that the voter had complied with all requisites provided by law necessary to make it the duty of the judges to receive his vote, or that he offered to comply therewith and was prevented by the judges, or that after he offered to comply with all such requisites, defendants wilfully refused to receive his vote. *Held*, error, for the reason that under this charge the jury might find defendants guilty whether a vote was offered them at a proper time, or not.

SAME. To render judges of election guilty of wilfully refusing the vote of an elector under Code 1873, section 4004, the offer to vote must have been made to defendants while acting officially as judges of election, and an offer made before the election board was organized is not sufficient.

TEST OATH. A refusal to receive a vote after refusing the prescribed test oath is just as much a violation of law as though a ballot offered after taking such oath had been refused, and, to constitute a compliance with the law, it is not required that the person who offers his vote shall take the oath before some other official qualified to administer it.

"WILFUL" DEFINED. Whether the refusal of a vote was with or without just grounds for believing the refusal to be lawful is wholly immaterial in determining whether or not the refusal was wilful within Code 1873, section 4004, making judges of election guilty of an offense for wilfully refusing a vote of a person who complies with the requisites prescribed by law to prove his qualification.

*Harmless error.* Judges of election cannot complain, on appeal from a conviction under Code 1873, section 4004, for wilfully refusing a vote of a person who complied with the requisites prescribed by law to prove his qualifications, of an instruction which requires that the refusal shall have been without just grounds for believing it to be wilful, as the error is favorable to them.

Instructions Conflicting: DEGREE OF PROOF. A portion of a charge in a criminal case, authorizing the determination of certain facts in the case by a preponderance of evidence, is prejudicial, not-withstanding the jury were told in other portions of the charge that they must be satisfied from the evidence, beyond a reasonable doubt, of every material allegation of the indictment, before they could convict.

PROVINCE OF JURY. The jury was told in regard to ascertaining whether defendants in doing what they did honestly intended to comply with the law, or wrongfully intended to disregard it, that "you should consider the interest defendants had in the election, as shown by the evidence, if any, and the feeling between the voter and defendants as shown by the evidence, and from all the facts and circumstances fairly. considered by you, determine whether or not the doing of the act complained of, by the defendants, and proven by the preponderance of the evidence were done with an honest intention to comply with the law or with the wrong intention to disregard it, and having determined these questions from the evidence, you should render a verdict in accordance therewith." *Held,* erroneous because it appears to assume, and may have induced the jury to believe that the acts essential to the crime charged, had been shown by the evidence.

*Appeal from Benton District Court.*—HON. G. W. BURNHAM, Judge.

WEDNESDAY, OCTOBER 6, 1897.

THE defendants, Edwin Clark and J. B. Story, were convicted of the offense of refusing, as judges of election, to receive a vote which was duly tendered,

and from a judgment which required each of them to pay a fine of twenty dollars and costs they appealed.— *Reversed.*

*Cato Sells* for appellant Clark.

*Matt Gaasch* and *J. D. & C. Nichols* for appellant Story.

*Milton Remley,* attorney general, for the state.

ROBINSON, J.—On the eleventh day of March, 1895, an election was held in independent district No. 7 of Jackson township, in the county of Benton, for the purpose of choosing a school director, and the defendants were judges of the election. The indictment charges that at that election they wilfully refused the vote of one J. C. Shaw, who insisted that he was entitled to vote, and offered to make oath to his qualifications as a voter, and wilfully refused to administer the oath which Shaw offered to take. It appears that Shaw was of foreign birth; that he came to this country when about three years of age, but that he had never received naturalization papers. It also appears that he had voted for years, and was one of the directors of the district, and that his right to vote had not been challenged previous to the election in question. There is evidence which tends to show that at some time during the meeting at which the election was held he offered to vote; that questions were asked him in regard to his qualifications as an elector; that the defendants expressed the opinion that he was not entitled to vote; that Shaw then said, "I will swear in my vote, and I will take the responsibility," but that an oath was not administered to him, and he did not vote. The defendants claim that the conversation in regard to the qualifications of Shaw, and his offer, if

any, to swear to them, occurred before the election board was organized, and that he did not make any offer after the poll was opened. Shaw also testified that he claimed to be entitled to vote because he had been in the army, and for the further reason that while he was but a child his father had voted.

I. The third paragraph of the charge given to the jury is as follows: "(3) Before you will be justified in convicting the defendants of the offense charged, you must be satisfied beyond a reasonable doubt,—*First*, that said Shaw had complied with all the requisites provided by law necessary to make it the duty of the defendants to receive his vote, or that he offered to comply therewith, and was prevented from so doing by the wilful refusal on the part of the defendants to permit him to do so; or, *second*, that after the said Shaw had offered to comply with all the requisites prescribed by law to entitle him to vote, that the defendants wilfully refused to receive his vote." The appellants contend that this portion of the charge was erroneous for several reasons, among which is this: that the jury could have found the defendants guilty without finding that they at any time refused to receive the vote of Shaw. That seems to have been true, for the jury was told, in effect, that it would be justified in convicting the defendants "if Shaw had complied with all the requisites provided by law necessary to make it the duty of the defendants to receive his vote," whether he offered it or not. That this is erroneous is clear, and that it may have been prejudicial is shown by the fact that there is much evidence which tends to show that the judges of election were not ready to receive votes when Shaw made the offer upon which he relies. Section 619 of the Code of 1873 provides as follows: "Any person offering to vote, whether his name be on the register or not, may be challenged as unqualified by

any judge or elector; and it is the duty of each of the judges to challenge any person offering to vote whom he knows or suspects not to be duly qualified." The next section is as follows: "620. When any person is so challenged, the judges shall explain to him the qualifications of an elector, and may examine him as to his qualifications as an elector, and if the person insists that he is qualified, and the challenge is not withdrawn, one of the judges shall tender to him the following oath: 'You do solemnly swear that you are a citizen of the United States, that you are a resident of this precinct, that you are twenty-one years of age as you verily believe, that you have been a resident of this county sixty days, and of this state six months next preceding this election, and that you have not voted at this election,' and if he takes such oath his vote shall be received." Some of the evidence tended to show that the defendants not only suspected, but believed, that Shaw was not a qualified voter, and that there was reason for that belief. Hence it would have been their duty to challenge him had he tendered his vote, and to have tendered to him the oath provided for by section 620, if, after the proper examination and explanations had been made, he insisted that he was entitled to vote.

But the offer to vote, the challenge, and the examinations and the explanations should have been made while the defendants were acting officially as judges of election; and to constitute the offense of which the defendants are accused an offer to vote while they were so acting was essential.

II. It is also urged that the third paragraph of the charge is erroneous, for the reason that it authorized the conviction of the defendants if Shaw offered to comply with the provision of the law which made it necessary for them to receive his vote, while section 4004 of the Code of 1873, makes a judge of election who wilfully

refuses a vote guilty of an offense, only when the person whose vote is refused "complies with the requisites prescribed by law to prove his qualifications." We do not think the objection thus made is well founded. It is the duty of one of the judges of election to tender the statutory oath if the person offering to vote insists, after the required explanations are made, that he is entitled to vote, and the person so offering his vote complies with the law when he offers to take that oath to be administered by one of the judges of election. And in case such judges refuse to administer the oath, it is not necessary, to constitute a compliance with the law, that the person who offers his vote take the oath before some other official qualified to administer it.

III. The sixth paragraph of the charge contains the following: "(6). The word 'wilfully,' when used in a statute creating a criminal offense, implies the doing of the act purposely and deliberately, in violation of law, without just grounds for believing the act to be lawful." The appellants contend that the definition thus given is erroneous, and that, we think, is true. Whether the act in question was done with or without "just grounds for believing" it to be lawful, was wholly immaterial. If it was done purposely and deliberately, it was done wilfully, within the meaning of the statute. *State v. Teeters*, 97 Iowa, 458. See, also, *Parker v. Parker*, 102 Iowa, 500. But the error was favorable to the defendants, and they were not in any manner prejudiced by it. The same is true of other portions of the same paragraph.

IV. The closing part of the sixth paragraph instructed the jury in regard to ascertaining whether the defendants in doing what they did, "honestly intended to comply with the law, or wrongfully intended to disregard its provisions," in language as

follows: "And for this purpose you should consider the interest that defendants had in the said election, as shown by the evidence, if any, and the feeling between the defendants and the said Shaw, as shown by the evidence, and from all these facts and circumstances, fairly considered by you, determine whether or not the doing of the acts complained of by the defendants, and proven by a preponderance of the evidence, were done with an honest intention to comply with the law, or with a wrongful intention to disregard the provisions, and, having determined these questions from the evidence, you should render a verdict in accordance therewith." This portion of the charge was erroneous, for reasons already stated in regard to the first part of the same paragraph, and we think it may have been prejudicial, for the reason that it appears to assume, and may have induced the jury to believe, that the acts of which the state complains had been proven by the evidence, thus taking that question from the jury; and for the further reason, if the jury understood that it was to determine the facts in the controversy, that it might do so from a mere preponderance of the evidence. It is true, other portions of the charge instructed the jury that it must be satisfied from the evidence, beyond a reasonable doubt, of every material allegation of the indictment before it could convict, but the portion of the charge in question was in conflict with that instruction, and it cannot be told what the jury followed. It is claimed for the state that there was no conflict in the evidence, but, if so, it shows that the examination of Shaw, and the refusal of his vote, if it was refused, occurred before the defendants were ready to receive the votes, and that is especially true of Clark. For the errors pointed out, the judgment of the district court is REVERSED.